JOHN S. LEONARDO
United States Attorney
District of Arizona

JONELL L. LUCCA
Arizona State Bar No. 021543

JOHN Z. BOYLE
Arizona State Bar No. 015640
Assistant U.S. Attorneys
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500
jonell.lucca@usdoj.gov
john.boyle@usdoj.gov
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America | **CR-11-0731-002-PHX-SRB** |
| Plaintiff, | |
| v. | **UNITED STATES' SENTENCING MEMORANDUM AND NOTICE REGARDING DEFENDANT'S CONVICTIONS ON COUNTS 8 AND 10 (VIOLATIONS OF 18 U.S.C. § 924(c))** |
| Artemio Pena-Torrecillas, | |
| Defendant. | |

The United States of America, by and through undersigned counsel, hereby submits its sentencing memorandum for the Court's consideration in this case.  The Government concurs with the Total Offense Level as determined by the United States Probation Office.   The Government recommends that the Court impose a sentence of 360 months' imprisonment on Counts 1, 2, 7, and 9, and a consecutive term of 120 months' imprisonment on Counts 8 and 10, for a total sentence of 480 months' imprisonment.

In an abundance of caution, the United States asks this Court to consolidate Counts 8 and 10 (violations of 18 U.S.C. Section 924(c)) for the purposes of sentencing to avoid a potential double jeopardy issue in this case.   The Defendant's convictions in Counts 8 and 10, pursuant to the jury instructions, were based either on a separate substantive count (Counts 7 and 9, respectively) or a single conspiracy count (Count 1).  Because Counts 8 and 10 could have been based upon the same predicate offense (Count 1), there is a potential double jeopardy issue requiring the consolidation of Counts 8 and 10.

1    The government's position is more fully explained in the attached memorandum of points
2    and authorities.
3        Respectfully submitted this 31st day of July, 2013.
4                                            JOHN S. LEONARDO
                                            United States Attorney
5                                            District of Arizona
6
                                             _s/ *Jonell L. Lucca*___
7                                            JONELL L. LUCCA
                                            Assistant United States Attorney
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.  INTRODUCTION

The Defendant was found guilty by a federal jury following a two-week trial before this Court.  During trial, substantial evidence was presented as to the Defendant's complete and total involvement as a leader of a drug trafficking and money laundering organization (DTO).  The Defendant was responsible for orchestrating narcotics deals as well as the return of narcotics proceeds to his drug sources of supply.  He, along with co-defendant Ortega-Ruano, were responsible for the distribution of pounds of methamphetamine, the collection of thousands of dollars in narcotics proceeds, and the maintenance of an arsenal of weapons.  He was a trusted leader of this DTO, who had access to all three stash houses maintained and used by this DTO.  The government concurs with the Offense Conduct as set forth in the Presentence Report (PSR) in Paragraphs 6 through 21.  The government agrees with the Total Offense Level of 42, which results in a sentencing range of 360 months to life in prison, to be followed by a consecutive term of at least 60 months in prison on the firearms charges.  The government believes a sentence of 40 years reflects the seriousness of his crimes, protects the community, and sends a strong message to those individuals contemplating a job as a well-armed drug dealer that such offenses result in severe penalties.

## II.  LEGAL ANALYSIS OF CONVICTIONS IN COUNTS 8 AND 10, VIOLATIONS OF TITLE 18 U.S.C. SECTION 924(c)

### A.      Facts and Procedural History

The Defendant's conviction in Count 8 is predicated on four firearms found in the San Miguel house from April 9 to April 12, 2011.  The Defendant's conviction in Count 10 is predicated on seven firearms found in the Hazelwood house from April 11 to April 13, 2011.  The jury instruction regarding Counts 8 and 10 reads, in relevant part, "In order for the defendant to be found guilty of this crime, the government must prove each of the following elements beyond a reasonable doubt: First, the defendant committed the crime of Conspiracy to

Possess with Intent to Distribute Methamphetamine and/or Possession with Intent to Distribute Methamphetamine. These are drug trafficking crimes."  Doc. No. 445 at 22.

B.      Law

The Ninth Circuit has held that "each 924(c)(1) count must be supported by a separate predicate offense." *United States v. Smith*, 924 F.2d 889, 894 (9th Cir.1991).   There can only be "one section 924(c)(1) conviction for any one predicate offense."  *United States v. Martinez*, 7 F.3d 146, 148 (9th Cir.1993). If multiple 924(c) offenses are based upon the same predicate offense, they must be consolidated.  *See United States v. Franklin*, 321 F.3d 1231 (9th Cir. 2003)("Multiple counts charged under section 924(c)(1) must be consolidated "either before or after trial, and before sentencing, so that there will be only one section 924(c)(1) conviction for [the] one predicate offense.").

C.      Jury Verdict

The jury instructions permitted the jury to convict the Defendant in Counts 8 and 10 based upon either the substantive drug offense (Count 7 [San Miguel stash house] and Count 9 [Hazelwood stash house]) or the overall drug conspiracy (Count 1).  Because the instruction is disjunctive, there is no way to know conclusively which count was the basis of the jury's verdict for Counts 8 and 10.  The issue arose in *United States v. Privette*, 947 F.2d 1259 (5th Cir.1991), where the defendant was charged with two 924(c) counts in an indictment similar to the present case. The *Privette* indictment allowed for conviction on each 924(c) count based either on a separate substantive count or the same conspiracy count. The court wrote:

> We agree with the government that Privette's conviction of conspiracy and his conviction of possession with intent to distribute could each support a separate § 924(c) conviction and sentence.
> The question we must decide here is whether the firearm counts must be linked to a particular drug trafficking offense. We conclude that to avoid violating double jeopardy principles each firearms offense must be sufficiently linked to a separate drug trafficking offense to prevent two convictions under § 924(c) on the same drug offense.
> ...
> We cannot determine whether the jury based both convictions on the use of firearms in the conspiracy. If the jury convicted Privette twice for using firearms during the conspiracy, Privette would be doubly punished for the same crime… The firearm charge must be tied to a specific drug trafficking offense to avoid the possibility that the jury will base two firearms charges on the same drug trafficking crime.

4

*Privette*, 947 F.2d at 1262.[1]

The Court in *Privette* did not preclude a district court, in the right case, from using the jury instructions or the facts as presented, to find that the jury used separate predicate offenses to find a defendant guilty of multiple 924(c) count.  Nonetheless, "[t]he key issue is whether a reviewing court can determine from the jury verdict whether the convictions violate double jeopardy principles."  *Id.* at 1263.

D.   Sentencing Recommendation as to the Defendant's 924(c) Convictions

Based on the specific facts and circumstances of this case, in light of the analysis in *Privette*, and without prejudice to the position of the United States in any other proceedings, the government recommends that the Court consolidate Counts 8 and 10, and sentence the Defendant as though he was convicted of only one 924(c) count.  The government further recommends a sentence of 120 months on the Defendant's 924(c) conviction.

At trial, the government presented evidence and the jury convicted the Defendant of possessing four firearms at the San Miguel stash house, including two handguns found in the Defendant's bedroom and two assault rifles strategically placed within the common areas of his residence.  All four firearms were loaded.  The jury also convicted the Defendant of possessing seven firearms at the Hazelwood stash house, including one handgun and six assault rifles again, strategically placed in the laundry and master bedroom of the residence.  The jury heard several intercepted telephone calls where the Defendant planned shooting outings with his co-conspirators and discussed weapons and ammunition by manufacturer and caliber.  The jury also heard evidence, in the form of intercepted calls, pole camera video footage, and a seizure, regarding the 46 assault rifles that the Defendant was instrumental in relocating to the 82nd Lane stash house following the arrest of his couriers in March 2011.

By law, the Court must sentence the Defendant to a term of at least 60 months

---

[1]  The Ninth Circuit has acknowledged *Privette*, although not on this issue, in *United States v. Lopez*, 37 F.3d 565, 570 (9th Cir. 1994)(reversed on other grounds): "The Fifth Circuit has explained that '[d]rug trafficking crimes separated by the measure of the double jeopardy clause can each support § 924(c) convictions.'" *United States v. Privette*, 947 F.2d 1259, 1262 (5th Cir.1991) (citing, inter alia, *United States v. Fontanilla*, 849 F.2d 1257 (9th Cir.1988)), cert. denied, 503 U.S. 912, 112 S.Ct. 1279, 117 L.Ed.2d 505 (1992).

consecutive to his sentence on his other convictions for drugs and money laundering. However, a statutory minimum sentence is not appropriate in this case because it fails to account for the well-stocked arsenal possessed by the Defendant. The Defendant was well-armed, and per his own intercepted calls, had no qualms about utilizing firearms if necessary to protect his drug enterprise. In the midst of planning a five-pound drug deal, he practiced firing the weapons found at his stash houses. An average defendant who is convicted of driving a drug load vehicle one time with one handgun in the car must receive a 60-month consecutive sentence. To give the Defendant a 60-month sentence for having, at a minimum, 11 firearms, at the ready to defend his pounds of very pure methamphetamine and narcotics proceeds at his multiple stash houses over a period of months, unfairly puts him on par with the hypothetical drug mule above. Such a sentence does not reflect the seriousness of the Defendant's criminal activities. Further, it does not deter future drug dealers from amassing multiple firearms ranging from handguns to assault rifles because a minimum sentence in this case sends the message that large quantities of firearms does not result in higher prison terms. Therefore, the government recommends that the Court sentence the Defendant to a consecutive term of 120 months in prison on the firearm convictions.

**III. SENTENCING RECOMMENDATION**

The commentary to § 6A1.3 of the Sentencing Guidelines instructs that, "in determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial. Any information can be considered, so long as it has 'sufficient indicia of reliability to support its probable accuracy.'" U.S.S.G. § 6A1.3, comment. The district court's factual findings and interpretation and application of the Sentencing Guidelines are upheld on appeal unless clearly erroneous. *United States v. Reyes-Oseguera*, 106 F.3d 1481, 1483 (9th Cir. 1997).

A.   The Defendant was an organizer/leader of the drug trafficking and money laundering organization.

The facts of the case demonstrate that the Defendant was a leader of this DTO, which was responsible for moving large quantities of methamphetamine from the Phoenix area to customers

for distribution.  The United States agrees with the Presentence Report writer that the Defendant should be given a four level increase for his leadership role in these offenses.  U.S.S.G. §3B1.1(a) provides for a four level increase for Aggravating Role if the defendant was an organizer or leader and the criminal activity involved five or more participants or was otherwise extensive. The Application Notes are particularly instructive as to when to apply this enhancement.  Application Note 1 advises that "a 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted."

Application Note 4 provides:

> In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as 'kingpin' or 'boss' are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.

"To sustain a finding that a defendant played an aggravated role under § 3B1.1 "there must be evidence that the defendant 'exercised some control over others involved in commission of the offense [or was] responsible for organizing others for the purpose of carrying out the crime.'" *United States v. Riley*, 335 F.3d 919, 929 (9th Cir. 2003).  "A defendant 'need only exercise authority over one and not all of the other participants in order to merit the adjustment.'" *Id.* The Ninth Circuit has found relevant whether the defendant exercised decision making authority in the procurement and distribution of narcotics. *United States v. Rivera*, 527 F.3d 891, 909 (9th Cir. 2008), citing *United States v. Ponce*, 51 F.3d 820, 827 (9thCir. 1995) (defendant determined when, where, and to whom the drugs would be sold); *United States v. Salcido-Corrales*, 249 F.3d 1151, 1154-55 (9th Cir. 2001) (defendant coordinated the distribution of drugs received from out-of-state sources, had initiated drug deals with an undercover officer, had negotiated the terms of the drug deals, and had set their locations and times).

The Defendant should receive a four level adjustment pursuant to U.S.S.G. §3B1.1(a) because he is a leader who had organizational authority over this primarily methamphetamine-based distribution conspiracy.  First, the Defendant exercised decision making authority in the

7

procurement and distribution of drugs.  The jury heard many intercepted calls in which the Defendant organized drug deliveries by talking to sources of supply and drug couriers, assisted Ortega-Ruano with DTO business, and gave orders to other co-conspirators working for him. In intercepted calls starting April 9, 2011, the Defendant coordinated the arrival of "five," believed to be five pounds of methamphetamine.  He spoke with Guero, a co-conspirator who lived at the 82nd Lane stash house, about using a truck to transport the narcotics.  The Defendant spoke with Kiko and Cuata about driving the drug load, and obtaining insurance for the load vehicle.  The Defendant spoke with Ortega-Ruano about the registration paperwork for the load vehicle.  On April 11, 2011, agents observed a truck go into the garage at the San Miguel stash house.  Later that night, the Defendant, driving a Honda Civic, called Tapia-Bernal, who was driving the truck, and told him to follow the Defendant.  They dropped the truck off at a house, and the truck left shortly thereafter.  A traffic stop of the truck revealed approximately 5.5 pounds of methamphetamine hidden in a compartment.  Even just this one drug deal showed that the Defendant was exercising decision making authority for this drug distribution conspiracy which involved five or more participants.

Second, the Defendant had extensive participation in the commission of the offenses.  He received and made telephone calls, set up drug transactions, provided large quantities of drugs to couriers for delivery to customers, lived at one stash house, frequently utilized the other two stash houses for DTO business, maintained a collection of firearms at these residences, and received a substantial amount of U.S. currency.

Third, the Defendant's conduct involved extensive participation in planning and organizing the offenses.  The Defendant was one of two men at the center of planning and organizing the drug activities noted above that allowed this conspiracy to exist.

Fourth, the nature and scope of the illegal activity was far reaching. The Defendant supplied methamphetamine to couriers to deliver to customers outside the Phoenix area. Based upon the investigation, the Defendant was a leader of this organization, which involved no fewer than fifteen participants including stash house operators, drug couriers, narcotics' proceeds couriers, and the leadership of the group.

Last, the degree of control and authority that the Defendant exercised over others was apparent through the evidence presented at trial.   The Defendant controlled the methamphetamine, delivered it to couriers, and prepared it for distribution.  Based upon all of the above, the Defendant has earned a four level increase in his offense level for being a leader of this drug organization.

B.      Consideration of the factors in 18 U.S.C. 3553(a) supports a sentence that falls within the Defendant's Sentencing Guidelines range.

The Sentencing Guidelines range is the "starting point and the initial benchmark" for all sentencing proceedings, and should be "kept in mind throughout the process." *United States v. Carty*, 520 F.3d 984, 991(9th Cir. 2008) (*en banc*) (citations omitted). The Sentencing Guidelines range is not presumed to be reasonable, but instead is only one of the § 3353(a) factors to be considered by the Court. *Id*. (citations omitted).  When a Court determines that a sentence outside of the Guidelines range is warranted, it must "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Id*.  (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)).  As such, "'a major departure should be supported by a more significant justification than a minor one.'" *Id*. at 992 (quoting *Gall*, 552 U.S. at 50). Consideration of other § 3553(a) factors does not support a downward variance from the Guidelines range.

1.      History and Characteristics of Defendant

Per the personal information contained in the PSR, the Defendant is a 27 year old man, who had nine years of schooling in Mexico, and has a common law wife. He has no mental impairments and is in good physical condition. Despite being in his mid-20s, it does not appear that the Defendant has been gainfully employed on a consistent basis in any field other than the drug trafficking business.

Although this is the Defendant's first felony conviction, the facts show that he was deeply involved in all facets of this criminal organization.  The Defendant's minimal criminal history is already taken into consideration by the U.S.S.G. when the criminal history category is

9

1   formulated.  See *Koon v. United States,* 518 U.S. 81, 111, 116 S.Ct. 2035 (1996)(downward

2   departure based on a defendant's first-time offender status is not warranted since Commission

3   takes this into account when formulating the criminal history category).   However, the

4   Defendant's crimes are viewed so seriously by the Sentencing Guidelines that even a Criminal

5   History Category I results in a range of 360 months to life imprisonment.   Neither the

6   Defendant's personal history nor criminal history warrants a downward variance outside the

7   applicable Guidelines range.

8                    2.        The Nature and Circumstances of the Offense

9          This conspiracy involved trafficking a significant quantity of methamphetamine.  Drug

10  trafficking is one of the most serious offenses provided for under Federal law.  *United States v.*

11  *Crawford*, 520 F.3d 1072, 1077 (9th Cir. 2008)(approving a district court finding that drug

12  trafficking is "probably one of the most serious crimes that confronts society at this time" in the

13  context of the 18 U.S.C. § 3553(a) factors).   Accordingly, Congress and the United States

14  Sentencing Commission have determined that drug traffickers deserve harsh punishment.

15  "Congress has created harsh penalties in order to deter such activity because of its ruinous

16  effects on individuals and communities."  *Crawford*, 520 F.3d at 1077 (approving of the district

17  court's analysis).

18         In the present case, DEA conducted a federal wiretap investigation into Ortega-Ruano and

19  the Defendant's drug networks.  Through those interceptions, DEA learned of load vehicles

20  carrying narcotics and drug proceeds and were able to make numerous traffic stops which

21  resulted in the seizure of drugs, money, and a firearm from a money courier.  The Defendant,

22  who was intercepted over months discussing DTO business, was instrumental in the DTO

23  operations.  Through extensive physical surveillances, done in conjunction with intercepted calls,

24  agents observed the Defendant at all of the stash houses.  The Defendant was observed at the

25  82nd Lane stash house on the day when the black trash cans containing 46 assault rifles were

26  delivered to the garage.  Through calls and surveillances, agents were able to seize narcotics

27  after the Defendant, followed by Tapia-Bernal, delivered a methamphetamine-laden truck to

28  drug couriers at another location.  At the conclusion of the investigation, DEA agents served

search warrants at the DTO's three stash houses.  As noted above, all the necessary equipment and products for a successful DTO were found between the three stash houses along with stockpiles of weapons.  Again, the facts noted by the government support a sentence of 360 months in prison for the Defendant.

3.    Promote Respect for the Law and Provide Just Punishment:

Under the circumstances of this case, a significant prison sentence is warranted to promote respect for the law and provide just punishment. The Defendant chose to engage in selling drugs in Phoenix.  The Defendant, through his actions, has demonstrated to this Court that he lacks respect for the laws of the United States and has no reservations about placing the members of his own family and the community in danger through his criminal conduct.  Such disregard for the safety of the community and the laws of our country requires a substantial prison sentence.

The PSR recommends that the Court vary from the applicable Sentencing Guidelines range and sentence the Defendant to 240 months in prison.  As one of its justifications for a 20-year sentence, the PSR notes that Ortega-Ruano received a sentence of 240 months.  The co-defendants in this case were sentenced by the Honorable Frederick J. Martone, District Court Judge for the District of Arizona.  The PSR does not inform this Court that Ortega-Ruano received a departure based upon his extreme physical condition resulting from serious burns over more than 50% of his body, and confirmation from the medical staff at the Bureau of Prisons that at least one surgery would be required during his term of incarceration.  Ortega-Ruano's sentence also reflects three levels for his acceptance of responsibility in this criminal conspiracy. Further, Ortega-Ruano was not convicted of any money laundering or firearms offenses, although he did receive a two-level enhancement for his possession of firearms during these drug offenses.  Therefore, to sentence the Defendant to the same term of imprisonment received by his co-defendant Ortega-Ruano would create unequal sentences among co-defendants, fails to reflect the additional crimes of which the Defendant was convicted, and would award him a sentence similar to one he still would not likely have received even if he had accepted responsibility for his crimes because he lacks any extreme physical impairments. The Defendant

11

1   should not receive a sentence equal to the sentence received by Ortega-Ruano.

2                  4.      The Need for Adequate Deterrence

3         The need for individual deterrence supports a sentence within the Sentencing Guideline

4   range.  Moreover, the need for deterrence that the Court is required to consider extends far

5   beyond preventing recidivism by the Defendant, but to deterring criminal conduct in general. *See*

6   *United States v. Politano*, 522 F.3d 69, 74 (1st Cir. 2008).[2]

7         Belief that the defendant will not reoffend is insufficient – the Court must impose a

8   sentence that will adequately deter those individuals in the future who face the temptation of ill-

9   gotten money through drug  trafficking.  *See United States v. Medearis*, 451 F.3d 918, 920-21

10  (8th Cir. 2006) (holding that courts must give "proper weight" to general deterrence as "one of

11  the key purposes of sentencing"); *cf. also Crawford*, 520 F.3d at 1077 (approving of district

12  court conclusion that "Congress has created harsh penalties in order to deter such activity

13  because of its ruinous effects on individuals and communities").  Although the conspiracy as

14  charged covered a four-month time period, it was evident through the trial testimony that the

15  Defendant was involved with this organization long before January of 2011.  A sentence that

16  falls within the applicable Sentencing Guidelines range is necessary to send a clear message that

17  drug traffickers and money launderers who utilize firearms in their criminal conduct will be held

18  accountable for their actions through the imposition of a lengthy prison term.

19             5.      Protection of the Public From Further Crimes of the Defendant

20        The Defendant has established that he has no reservations about engaging in criminal

21  activity in our community.  No calls were intercepted where the Defendant expressed regret for

22  his involvement with selling drugs, or concern for the people whose addictions he was fueling

23  through the destructive product he was distributing.  In fact, in one call he seemed to threaten

24  with harm any SWAT team who showed up at his house.  He spent his free time practicing his

25  shooting skills and hanging out in his 3,000+ square foot home in a gated community.  The

26

27      [2] *See also United States v. Pugh*, 515 F.3d 1179, 1194 (11th Cir. 2008) (describing the
    factor of § 3553(a)(2)(B) as one of "general deterrence"); *United States v. Phinazee*, 515 F.3d
28  511, 515-16 (6th Cir. 2008) (noting the "longstanding and uncontroversial practice of
    considering general deterrence in sentencing").

Defendant led an extensive drug and money laundering organization that was well-armed.  In his stash house alone, multiple assault rifles, handguns, and ammunition were recovered.  A total of 60 firearms were recovered from the three stash houses.  The vast quantity of narcotics pumped into our communities through this DTO, coupled with the sheer firepower maintained by its members, should result in a sentence within the applicable Sentencing Guidelines range so that the members of the public can be protected from further criminal conduct by the Defendant.

**III.  CONCLUSION**

The United States submits that the Presentence Investigation Report makes appropriate findings of fact.  The United States requests that this Court find the Defendant has a Base Offense Level of 38, with further adjustments resulting in a Total Offense Level of 42.

In this particular case, the Guidelines' range is not artificially high merely based upon drug quantity alone.  However, it is important to note that this DTO distributed incredibly pure methamphetamine.  It maintained and used three stash houses for its business, and stocked each residence with assault rifles, high-capacity magazines, and ammunition.  The DTO earned thousands of dollars in proceeds from its drug enterprise.  The Defendant was a leader of and an important reason for the DTO's success.

Based upon all of these facts, the resulting Guideline range appropriately reflects the seriousness of the criminal acts involved in this case.  The United States recommends that the Defendant be sentenced to 360 months on Counts 1, 2, 7 and 9 to be followed by a consecutive sentence of 120 months on Counts 8 and 10, for a total sentence of 480 months in prison.  The

//

//

//

United States believes that this is a reasonable sentence pursuant to 18 U.S.C. § 3553 given all of the facts in this particular case.

Respectfully submitted this 31st day of July, 2013.

JOHN S. LEONARDO
United States Attorney
District of Arizona


   s/*Jonell L. Lucca*
JONELL L. LUCCA
Assistant United States Attorney

1

## CERTIFICATE OF SERVICE

2        I hereby certify that on July 31, 2013, I electronically transmitted the attached document

3   to the Clerk's Office using the CM/ECF system for filing  and transmittal of a Notice of

4   Electronic Filing to the following CM/ECF registrants:

5   Cameron Morgan
    Attorney for the Defendant
6

7   By:   S/Raquel Lopez

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28