FILED

AUG 03 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff - Appellee, <br><br> v. <br><br> ARTEMIO PENA-TORRECILLAS, <br><br> Defendant - Appellant. | No. 13-10444 <br><br> D.C. No. 2:11-cr-00731-SRB-2 <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Submitted July 19, 2016[**]
San Francisco, California

Before: GRABER and TALLMAN, Circuit Judges, and EDMUNDS,[***] Senior District Judge.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The panel unanimously concludes that this case is suitable for decision without oral argument. Fed. R. App. P. 34(a)(2).

[***] The Honorable Nancy G. Edmunds, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

Defendant Artemio Pena-Torrecillas was convicted by a jury of drug trafficking, money laundering, and carrying a firearm in furtherance of a crime. He appeals the district court's denial of his motion to suppress evidence. He also seeks remand in light of an amendment to the Sentencing Guidelines. We affirm.

1. Defendant argues that his motion to suppress wiretap evidence should have been granted because the wiretap applications at issue lacked both probable cause and necessity. We review de novo the denial of his motion to suppress. United States v. Reyna, 218 F.3d 1108, 1110 (9th Cir. 2000).

We will uphold an issuing judge's probable cause determination where, looking only to the four corners of the wiretap application, there is a substantial basis to support the probable cause finding. United States v. Meling, 47 F.3d 1546, 1552 (9th Cir. 1995). The issuing judge must find probable cause to believe that: (1) an individual is committing, has committed, or is about to commit specified offenses; (2) communications relevant to that offense will be intercepted through the wiretap; and (3) the individual who is the focus of the wiretap investigation will use the tapped phone. Id. (citing 18 U.S.C. § 2518(3)(a)-(d)).

Having reviewed the wiretap applications for Target Telephone ("TT") 7 and TT9, we conclude there is a substantial basis to support the issuing court's finding of probable cause for each. With regard to TT7, the government submitted an 80-page

affidavit in support of its application to tap TT7, a phone utilized by Cruz Samuel Ortega-Ruano ("Cruz"). After a five-month investigation into Cruz, the government submitted that there was probable cause to believe Cruz was running a narcotics Drug Trafficking Operation ("DTO") in the Phoenix area. The affidavit provides a significant amount of information in support, including: intercepted calls during which Cruz was heard discussing what agents believed to be the quality and quantity of narcotics; physical surveillance of a suspected delivery of narcotics to Cruz's courier; surveillance of a hand-to-hand transaction involving an individual in Cruz's vehicle; and surveillance of storage devices (i.e., bags, coolers) being moved in and out of vehicles and residences associated with Cruz. These facts establish probable cause to issue the wiretap. Contrary to Defendant's argument, the information in the affidavit is not stale. The affidavit details an active and ongoing investigation, describing surveillance and evidence of suspect activity through January 2011—the same month the TT7 wiretap was authorized. Probable cause with respect to drug trafficking offenses may continue for "several weeks, if not months, of the last reported instance of suspect activity." United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986).

  Shortly after the TT7 wiretap was authorized, agents identified Defendant as a suspected facilitator of the Cruz DTO. The government submitted a 49-page affidavit

in support of its request to tap TT9, a phone utilized by Defendant. The affidavit describes intercepted calls during which agents believe that Defendant was heard: providing directions and making arrangements for a transfer of illegal narcotics; discussing the location of narcotics proceeds; and discussing specific quantities of narcotics. A tracking device placed TT9 at one of Cruz's residences on February 17, 21, 24, and 26. Toll records showed that TT9 was in contact with at least two individuals who had been intercepted over TT7 discussing what agents believed to be narcotics and narcotics proceeds. These facts, and others set forth in the affidavit, provided the issuing judge with a substantial basis for concluding that probable cause existed to authorize the TT9 wiretap.

Defendant also argues the wiretap evidence should have been suppressed because the government did not demonstrate necessity, as required by 18 U.S.C. § 2518. Section 2518(1)(c) requires that a wiretap application include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." We review de novo whether an application for a wiretap contains a full and complete statement, as required under § 2518(1)(c). United States v. Staves, 383 F.3d 977, 980 (9th Cir. 2004). If it does, "we review the issuing judge's decision that the wiretap was necessary for an abuse of discretion." Id.

Each wiretap application describes several traditional investigative techniques employed before resorting to the wiretap request. For example, agents established physical surveillance; set up pole cameras; utilized telephone tracking devices; obtained authorization for mobile number recorders; and subpoenaed toll records and subscriber information. The affidavits also explain why other investigative tools were not used. We use a "common sense approach to evaluate the reasonableness of the government's good faith efforts to use traditional investigative tactics or its decision to forgo such tactics based on the unlikelihood of their success or the probable risk of danger involved with their use." United States v. Rivera, 527 F.3d 891, 902 (9th Cir. 2008) (internal quotation marks omitted). Although a wiretap "should not ordinarily be the initial step in the investigation, law enforcement officials need not exhaust every conceivable alternative before obtaining a wiretap." Id. (internal quotation marks and alteration omitted). Thus, the failure to conduct trash searches or use pen registers or trap-and-trace devices does not demonstrate a lack of necessity. Likewise, the inclusion of some boilerplate regarding the inherent limits of certain investigative tools is not determinative, either. See United States v. Garcia-Villalba, 585 F.3d 1223, 1230 (9th Cir. 2009). Rather, we look to the affidavits "as a whole" and conclude that they are sufficiently case-specific. See id. We find that the wiretap applications are supported by a full and complete statement showing the necessity of the wiretaps.

Accordingly, we also hold that the district court did not abuse its discretion in finding necessity for the wiretap authorizations.

2. Defendant also seeks remand in light of Amendment 782 to the United States Sentencing Guidelines. Because Defendant may move the district court for relief under this amendment to the Guidelines, we decline to remand on that ground. See United States v. Boykin, 785 F.3d 1352, 1364 n.9 (9th Cir.) (citing 18 U.S.C. § 3582(c)(2)), cert. denied, 136 S. Ct. 272 (2015).

**AFFIRMED.**